IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **MATTIE M. THOMPSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **3:12-cv-2396-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Mattie M. Thompson ("Thompson") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I. Procedural History

Thompson filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income, on August 28, 2009, alleging a disability onset date of August 1, 2008, due to loss of hearing in her left ear, and knee, elbow, and ankle problems. (R. 16, 175). After the SSA denied Thompson's claim, she

requested a hearing before an ALJ. (R. 72-73). The ALJ subsequently denied Thompson's claim, (R. 13-22), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Thompson then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

>    (3)   whether the impairment meets or equals one listed by the Secretary;
>
>    (4)   whether the claimant is unable to perform his or her past work; and
>
>    (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id.*

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Thompson met the insured status requirements of the Act through June 30, 2013. (R. 18).  Moving to the first step, the ALJ found that Thompson had not engaged in substantial gainful activity since August 1, 2008, and, therefore, met Step One.  *Id.* Next, the ALJ found that Thompson satisfied Step Two because she suffered from the severe impairments of "osteoarthritis of the bilateral knees, obesity, and mild hearing loss without the use of hearing aids."  *Id*.  The ALJ then proceeded to the next step and found that Thompson failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 19).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that through Thompson's DLI she

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant [is limited] to only occasional pushing and pulling of the lower extremities, occasional climbing of ramps and stairs, balancing,

> stooping, kneeling, crouching, and crawling. The claimant is
> restricted to no climbing of ladders, ropes, or scaffolds, and must
> avoid all exposure to unprotected heights and dangerous machinery.
> The claimant further must avoid concentrated exposure to extreme
> heat and cold, wetness, humidity, noise, vibration, and fumes, odors,
> dusts, and gasses.

(R. 19). As of the date of the ALJ's decision, Thompson was 45 years old, (R. 100), and had past relevant work experience as a teacher, substitute teacher, and day care center director. (R. 22, 38-39). In light of Thompson's RFC, the ALJ found that Thompson was "capable of performing past relevant work as a day care center director, substitute teacher, and teacher." (R. 22). Therefore, the ALJ found that Thompson "has not been under a disability, as defined in the Social Security Act, from August 1, 2008, through the date of this decision." *Id.*

## V. Analysis

The court now turns to Thompson's contentions that the ALJ erred because he failed to (1) properly assess her credibility; (2) obtain vocational expert testimony; and (3) properly consider her impairments in combination. *See* doc. 11 at 7-11. The court addresses each contention in turn.

    A.    <u>The ALJ properly assessed Thompson's credibility.</u>

Thompson contends that the ALJ's credibility finding is not supported by substantial evidence. Doc. 11 at 7-8. Thompson testified that she had to elevate her knees at least four times per day to relieve swelling. (R. 46-47). Thompson further testified that she had "very intense" knee pain at times that interfered with her

7

ability to perform her duties as a substitute teacher.  *Id.*  The ALJ found Thompson's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms."  (R. 20).  Therefore, Thompson met the requirements of the pain standard set out above.  However, the ALJ found Thompson's allegations of disabling symptoms was not fully credible.  *Id.*  It is this determination that Thompson challenges, and in light of her appeal, this court must review the ALJ's finding to determine if it is supported by substantial evidence.

Consistent with the pain standard in this circuit, the ALJ articulated reasons why he did not credit Thompson's testimony.  For example, the ALJ observed that "the medical evidence of record reveals that treatment for the claimant's knee pain has been relatively sparse."  (R. 20).  In fact, the medical records show Thompson sought treatment only twice for her alleged disabling knee pain.  (R. 227-31).  Significantly, these visits occurred on February 26, 2010, and March 12, 2010, over 18 months after Thompson alleges she became disabled.  *Id.*  Therefore, the ALJ properly considered the lack of treatment during significant periods of time in assessing Thompson's credibility.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th. Cir. 2005) (finding the ALJ properly considered gaps in treatment in assessing credibility).

The ALJ further noted that treatment "[r]ecords show that there have been few if any recommendations for surgery, pain management, or other more

8

aggressive treatment options that would be expected for pain of the degree alleged." (R. 20-21). The treatment records support this finding and show that Dr. Frank Hatchett initially noted Thompson was "taking a minimal amount" of anti-inflammatory medicine, which would need to be increased.  (R. 230).  Dr. Hatchett also indicated other forms of more aggressive treatment could be considered, and that "eventually she will be a candidate for knee replacement." *Id.*  However, the treatment records do not show that any of these more aggressive measures were actually undertaken.  Although Thompson told Dr. Hatchett at her second visit that she wanted to have knee replacement surgery, Dr. Hatchett opined Thompson "would need to make every effort to lose weight if at all possible prior to the surgery."  (R. 228).  Unfortunately, almost one year after Dr. Hatchett's recommendation of weight loss, Thompson testified at her hearing that she had difficulty losing the weight, and that she could not afford the surgery.  (R. 50-51). Therefore, the ALJ properly considered the conservative nature of Thompson's treatment in finding her not fully credible.  *See Falcon v. Heckler*, 732 F.2d 827, 832 (11th Cir. 1984) (finding the ALJ properly considered the claimant's conservative treatment in assessing credibility).

    The ALJ also found Thompson's "continued abilities to work as a substitute teacher coupled with her extensive activities of daily living including housekeeping, cooking, and shopping further belie her claims." (R. 21).  The ALJ's consideration

of these activities in assessing Thompson's credibility was proper. *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (finding the ALJ properly considered daily activities in assessing credibility); 20 C.F.R. § 404.1529(c)(4) (ALJ "will consider . . . the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence" in determining the vocational impact of subjective symptoms).

Ultimately, based on this record, Thompson has failed to show that the ALJ erred in failing to credit her testimony of disabling pain. In fact, the ALJ articulated specific reasons for discounting Thompson's testimony of disabling symptoms–all of which are supported by substantial evidence. Moreover, even though the ALJ did not credit Thompson's testimony of disabling symptoms, he recognized that Thompson had some limitations caused by her impairments. (R. 21). The ALJ explained that he accounted for Thompson's symptoms in his RFC assessment by providing "lifting and walking restrictions and postural restrictions to accommodate [Thompson's] knee pain and obesity along with environmental limitations to accommodate her hearing loss." *Id.* The court finds that substantial evidence supports the ALJ's determination that these restrictions account for Thompson's symptoms. Accordingly, because this court does not reweigh the evidence, there is no reversible error in the ALJ's credibility finding.

B.     The ALJ did not err in failing to obtain vocational expert testimony.

Thompson contends also that the ALJ erred because he found she could return to her past relevant work without the testimony of a vocational expert (VE), and that the ALJ "offers no support" for his finding that Thompson's past relevant work does not exceed her RFC. Doc. 11 at 9. Thompson ignores, however, that VE testimony "is only required . . . after the claimant has met [her] initial burden of showing that [she] cannot do past work." *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). At Step Four, evidence from a vocational expert is not necessary when an ALJ determines the claimant is capable of performing past relevant work. *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990).

Thompson's related argument that the ALJ offered no support for finding Thompson could perform her past relevant work is also unavailing. Contrary to Thompson's assertion, the ALJ cited to Exhibit 4E, which contains detailed information provided by Thompson about her prior jobs. (R. 22). Among other things listed in her work history report were requirements for walking, standing, sitting, and climbing required by her prior jobs. (R. 155-162). The ALJ properly relied on Thompson's information because "the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." *See* SSR 82-62, 1982 WL 31386 (S.S.A.).

11

Because the exertional and other requirements listed by Thompson for her past job as a day care center director do not exceed her RFC, (R. 155), the ALJ relied upon substantial evidence to determine Thompson could perform relevant work.

Likewise, in finding that Thompson could perform her past relevant work as generally performed in the national economy, the ALJ cited to a Vocational Rationale Form completed by a State agency Disability Specialist. (R. 165-167). That form indicates that based on Thompson's RFC as assessed by the State agency, Thompson would be able to perform her past relevant work as a director of a day care center as it is generally performed, and lists the Dictionary of Occupational Titles (DOT) number for the job as 092.167-010.[2] (R. 165). The DOT lists that job as sedentary, with other requirements that are also compatible with Thompson's RFC. *See* DICOT 092.167-010, 1991 WL 646894 (G.P.O.).

In sum, the ALJ was not required to elicit testimony from a VE because Thompson failed to carry her burden of proving she could not perform her past relevant work. Moreover, the ALJ properly relied on information provided by Thompson to determine the actual vocational requirements of her past job as a day care center director, and on the DOT to determine the vocational requirements of that job as it is generally performed. The ALJ reasonably relied on this evidence to

---

[2] The Dictionary of Occupational Titles is published by the Department of Labor and used by the Commissioner to take administrative notice of the presence of jobs in the national economy. 20 C.F.R. §§ 404.1566(d)(2), 416.966(d)(2).

find Thompson could perform her past relevant work, and committed no reversible error.

C.      The ALJ properly considered Thompson's impairments in combination.

Thompson's final argument is that the ALJ did not consider her hearing loss and hypertension in combination with her other impairments. Doc. 11 at 10. When a claimant has several impairments, the Commissioner "has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991). Here, a review of the ALJ's decision shows that he complied with the obligation to consider Thompson's impairments in combination. Consistent with this obligation, the ALJ found that "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 18). This finding alone is sufficient to establish that the ALJ considered the impairments in combination. *See Jones*, 941 F.2d at 1533 (ALJ's finding that the claimant "does not have 'an impairment *or combination of impairments* listed in, or medically equal to one [in the Listings]'" was sufficient evidence to show the ALJ had considered the combined effect of the impairments) (emphasis in original). Moreover, the ALJ included limitations in his RFC assessment related to Thompson's hearing loss by providing that Thompson "must avoid concentrated exposure to . . . noise," (R. 19), and stated that his RFC

finding provides for "environmental limitations to accommodate her hearing loss." (R. 21). This shows the ALJ considered Thompson's hearing loss in combination with her other impairments when assessing her RFC.

Thompson's contentions regarding her hypertension overlook that Thompson failed to identify any limitations caused by her hypertension either at the time of her application for disability, (R. 175), or at her ALJ hearing. (R. 36-52). Therefore, the ALJ was under no obligation to investigate or consider limitations caused by Thompson's hypertension. *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (unpublished) (observing that an ALJ is not required to investigate allegations "not presented at the time of the application for benefits and not offered at the hearing as a basis for disability ") (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). Because Thompson points to no limitations caused by her hypertension, and did not allege any restrictions from hypertension at the administrative level, the court finds no error in the ALJ's failure to find such restrictions.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Thompson is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the

Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 10th day of June, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE
